# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

| | |
|---|---|
| U.S. BANK, NA, | Case No. 2:13-cv-01254-APG-GWF |
| Plaintiff, | |
| v. | **ORDER** |
| | (ECF Nos. 67, 74, 81, 82, 102, 105, 106, 109, 112, 113, 115, 119, 127, 137) |
| RECOVERY SERVICES NORTHWEST, INC., d/b/a CUSTOM RECOVERY, et al., | |
| Defendants. | |

U.S. Bank, NA ("US Bank") and Recovery Services Northwest, Inc. ("Custom") entered into several agreements whereby Custom performed repossession services for US Bank. Each agreement obligated Custom to (1) reimburse US Bank for any costs or expenses it incurred as a result of Custom's (or its subcontractor's) repossessions, and (2) defend US Bank should it ever be sued over something Custom or its subcontractors did. US Bank was sued by one of its customers over a repossession. US Bank then brought this separate case seeking reimbursement from Custom of its litigation costs incurred in that suit.

US Bank now moves for summary judgment, arguing there is no triable issue as to either Custom's liability for US Bank's litigation costs or the amount of those costs. Custom opposes on one narrow ground: It fulfilled its indemnification obligation by hiring US Bank an attorney in the underlying action; thus, it cannot be liable for the expenses US Bank incurred when it decided to hire its own attorney.

The undisputed evidence shows that US Bank incurred litigation costs as a direct result of Custom's subcontractor's repossession, so Custom is liable whether or not it provided US Bank with an attorney. This is reason enough to find Custom liable as a matter of law.

But there are at least two other independent reasons that Custom is liable under the parties' agreements. First, US Bank had the express right to hire its own counsel and bill Custom

for the fees under the agreement that was in effect at the relevant time. Second, Custom breached its duty to defend by failing to provide US Bank with an adequate defense.

In short, under multiple theories, any of which is enough on its own, there is no genuine dispute that Custom is liable for the litigation expenses that US Bank incurred in the underlying case. That leaves only damages. Custom does not oppose US Bank's evidence or its damage calculations, so there is no triable issue of fact left for a jury. I therefore grant summary judgment in favor of US Bank. Custom has also filed its own motion for summary judgment, a motion for judicial estoppel, and motions challenging two of Magistrate Judge Foley's orders. None of Custom's motions has any merit, so I deny them.

## I.     BACKGROUND

### A. US Bank hires Custom to repossess cars, and the two parties enter into an indemnification agreement.

In 2008, US Bank entered into a contract with Custom calling for Custom to repossess cars for US Bank. This 2008 agreement also obligated Custom to "defend, indemnify and hold [US Bank] harmless" for all "costs and expenses (including reasonable attorney's fees)" relating to Custom's repossessions (or any of its subcontractors' repossessions).[1] This obligation was "notwithstanding any other provision" in the agreement.[2] However, if US Bank was sued for one of Custom's repossessions, Custom had the right to "control . . . [the] defense and settlement negotiations" in the case.[3]

### B. US Bank is sued because Custom's subcontractor allegedly botches a repossession of a BMW, and Custom takes over US Bank's defense.

In June of 2011, US Bank was sued for claims arising from Custom's repossession services. Custom's subcontractor repossessed a BMW from one of US Bank's customers and a

---

[1] ECF No. 114-2 at 4.

[2] *Id.*

[3] *Id.*

1   fight broke out.  The BMW's owner sued US Bank, the subcontractor, and the subcontractor's

2   employee.

3          US Bank notified Custom of the lawsuit, but Custom did not immediately take up US

4   Bank's defense.  So while Custom decided what to do, U.S. Bank hired its own counsel to defend

5   it.  US Bank's counsel successfully litigated a portion of the lawsuit.[4]  Custom later decided it

6   would defend U.S. Bank and took over the defense.  Custom—through a subcontractor's

7   insurer—substituted in Eugene Wait as US Bank's counsel.[5]

8          At this point Custom washed its hands of US Bank's case.  Custom admits that it had no

9   involvement, whatsoever, in managing Wait or ensuring that he provided an adequate defense for

10  US Bank.[6]  Custom viewed its obligation to provide a defense as fulfilled once it hired an

11  attorney.

12      **C.  The parties enter into a new indemnification agreement mid-litigation and US
         Bank becomes unhappy with Custom's defense.**

13

14         A few months after Wait took over the defense, US Bank and Custom entered into a new

15  agreement that "supersede[d] and replace[d]" the 2008 agreement.[7]  This 2011 agreement

16  similarly obligated Custom to pay any losses US Bank suffered as a result of Custom's

17  repossessions.[8]  But the 2011 agreement took away Custom's exclusive right to control the

18  defense of any lawsuits and gave US Bank the right to retain its own counsel at any time at

19  Custom's expense.[9]

20  _____

21         [4] *Id.* at 6-7.

22         [5] Wait is also counsel of record for Custom in this litigation.

23         [6] ECF No. 33 (Custom admitting that it had "no involvement, control, or direction" over
    US Bank's defense).

24         [7] ECF No. 114-9 at 2.  The 2011 agreement also contains a merger clause and a "conflict
    in terms" clause further indicating that it was meant to replace the terms of the 2008 agreement.
25  ECF No. 115-1 at 29:12-30:8, 62:8-16, 64:9-22, 149:12-18, 153:23-154:2, 177:2-5.

26         [8] ECF No. 114-9.

27         [9] *Id.* at 12-13 ("[US Bank may] itself defend and control the settlement and defense of the
    suit at [Custom's] expense.").  The parties later entered into another superseding agreement in
28  2012, but because all of the relevant terms in the 2011 and 2012 contracts are identical, I analyze

Over the following ten months, US Bank became increasingly dissatisfied with Wait's representation—and for good reason.  Wait never disclosed any witnesses for US Bank in the case.[10]  He did not inform US Bank about important case events.[11]  He did not allow US Bank to review any draft pleadings or motions before they were filed.[12]  Wait filed an answer on US Bank's behalf without ever actually showing it to US Bank (or, for that matter, telling US Bank that an amended complaint had been filed in the case).[13]  Wait then told US Bank, his own client, that US Bank could not provide him with instructions related to its own defense.[14]

**D. US Bank substitutes new counsel in and wins on summary judgment.**

US Bank told Custom that it was concerned about Wait's representation, but Custom admits it did nothing in response.[15]  It did not contact Wait or the insurer to investigate US Bank's complaints about its defense.[16]  When the other defendants in the case—who were also represented by Wait—started receiving sanctions because of Wait's representation, US Bank fired him and hired its own counsel.[17]  US Bank's new counsel took over the case, resolved outstanding discovery issues, and won a summary judgment motion that removed US Bank from the case without any liability.[18]

Wait continued to represent US Bank's co-defendants.  He lost his motions for summary judgment filed on behalf of the other defendants, and several more sanctions were entered against the remaining defendants for failing to timely provide discovery responses, failing to comply with

_____

them together.  When I refer to the 2011 agreement throughout this order, I mean both the 2011 and 2012 agreements collectively.

[10] ECF No. 115-7.

[11] ECF No. 115-15, 115-16, 115-7.

[12] *Id.*

[13] *Id.*

[14] ECF No. 115-17.

[15] ECF No. 115-18.

[16] ECF Nos. 115-4; 115-1 at 70:18-71:19, 74:15-75:1.

[17] ECF No. 115-18.

[18] *Id.*

the court's orders, and failing to produce documents.[19]  The court at one point noted that Wait "engaged in unnecessary gamesmanship, which [resulted] in noncompliance with [the court's] order."[20]  The court imposed liability against the remaining defendants, who ended up settling for $300,000 along with an assignment of malpractice claims against Wait.[21]

**II.   ANALYSIS**

**A.  Summary judgment standard**

Summary judgment is appropriate when the pleadings and discovery, "together with the affidavits, if any, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[22]  For summary judgment purposes, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[23]

If the moving party demonstrates the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[24]  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[25]  She "must produce specific evidence, through affidavits or admissible discovery material, to show" a sufficient evidentiary basis on which a reasonable fact finder could find in her favor.[26]

---

[19] *Mkhitaryan et al v. US Bancorp et al*, No. 11-cv-1055, ECF No. 120; *id.* at ECF No. 152 at 5-6 (referring to Wait's representations as "evasive").

[20] *Id.* at ECF No. 152 at 5:20-27, 7:7-9.

[21]  *Id.* at ECF No. 220.

[22] *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[23] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[24] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[25] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).

[26] *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

1   A party must support or refute the assertion of a fact with admissible evidence.[27]  As the
2   summary judgment procedure is the pretrial functional equivalent of a directed-verdict motion, it
3   requires consideration of the same caliber of evidence that would be admitted at trial.[28]  Thus, it is
4   insufficient for a litigant to merely attach a document to a summary judgment motion or
5   opposition without affirmatively demonstrating its authenticity.

**B.  There is no triable issue of fact remaining as to whether Custom is liable for US Bank's litigation expenses in the underlying lawsuit.**

8   US Bank's motion for summary judgment outlines its relatively simple breach-of-contract
9   theory and why no triable issues remain in this case: (1) the indemnification provisions in both
10  the 2008 and 2011 agreements expressly state that Custom must pay for all of US Bank's losses
11  related to a lawsuit arising from Custom's repossession services, and (2) US Bank was sued for
12  Custom's repossession services and incurred attorney's fees and costs.  US Bank supports its
13  motion with evidence establishing the terms of these agreements and the expenses it paid its
14  attorneys.[29]

15  Custom largely agrees with US Bank's positions.  Custom does not dispute that US Bank
16  incurred costs in defending against the underlying lawsuit, it does not dispute that the underlying
17  lawsuit arose from Custom's repossession services, and it makes no real effort to dispute the
18  extent of US Bank's expenses.  Instead, Custom relies on a single argument: the only agreement
19  that US Bank can sue under is the 2008 agreement—and Custom fulfilled its obligations under
20  the 2008 agreement by providing US Bank with an attorney.[30]  Custom's argument fails for
21  several reasons, each enough on its own to warrant judgment for US Bank.

---

23   [27] Fed. R. Civ. Proc. 56(c)(1); *Orr*, 285 F.3d at 773; *Harris v. Graham Enterprises, Inc.*,
24   2009 WL 648899, at *2 (D. Ariz. Mar. 10, 2009).

25   [28] *Anderson*, 477 U.S. at 251 (citing *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S.
     731, 745 n.11 (1983)).

26   [29] *See* ECF Nos. 115-7, 115-8 (itemized receipts and descriptions of US Bank's litigation
     costs in the underlying suit).

27   [30] For example, when asked in an interrogatory what facts supported Custom's position
28   that it was not liable to US Bank in this case, Custom responded simply that "the July 1, 2008

*1. US Bank has established Custom's liability under the 2011 agreement.*

Custom repeatedly argues that the 2008 agreement governs US Bank's claims, but I disagree.  US Bank sued under the 2011 agreement, and Custom provides no analysis or authority as to why US Bank should be barred from doing so.  The 2011 agreement expressly gives US Bank the right to hire its own counsel and bill Custom for the costs.  Custom argues that its obligations should be governed by the 2008 contract (which was in existence at the time the underlying lawsuit was filed) rather than the 2011 contract (which was in existence at the time US Bank elected to hire new counsel).  But Custom provides no authority for its argument either in the language of the contracts or under governing caselaw.[31]

Nothing in the 2011 agreement suggests that the parties intended that it not apply to lawsuits that had already been filed at the time the 2011 agreement was signed.  The language of the 2011 agreement suggests that the parties intended its terms to apply to all lawsuits, existing or future ones.[32]  The agreement explicitly states that it "supersedes and replaces" the 2008 agreement in its entirety, suggesting that the parties wanted the 2011 agreement to govern all aspects of the parties' relationship.[33]  The 2011 agreement also contains a merger clause stating that it "supersedes all prior" agreements and understandings between the parties "without limitation."[34]  The 2011 agreement uses broad language to obligate Custom to pay for "any" of US Bank's losses related to "any third party claim."[35]  There is no language limiting Custom's obligations to only future cases, and there is no language limiting US Bank's right to select its

---

Master Services Agreement between BANK and CUSTOM provided that CUSTOM shall have control of the defense in the litigation against BANK." ECF No. 115-1.

[31] Custom argues that because US Bank initially asked Custom to provide a defense while the 2008 agreement was still in effect, US Bank cannot avail itself of the parties' later agreements.  But it provides no explanation of why that is the case.

[32] *See Lundstrom Const. Co. v. Dygert*, 94 N.W.2d 527, 531 (Minn. 1959) (holding that agreements should be interpreted based on their terms and by reading the agreement as a whole).  The contracts cite Minnesota as the governing law, so I look to Minnesota cases.

[33] ECF No. 115-9 at 19.

[34] *Id.*

[35] *Id.* at 10.

own counsel to only future cases.  Custom provides no other reason to think that the parties meant to carve out an exception so that US Bank's right to elect new counsel would not apply to ongoing lawsuits. Because Custom has failed to establish that the 2011 agreement does not govern the parties' dispute here—and because Custom solely relies on terms in the 2008 agreement to oppose US Bank's motion—this is enough to rule in favor of US Bank.[36]

### 2.  *US Bank has established Custom's liability under the 2008 agreement.*

Even if I were to agree that US Bank must base its breach of contract claim on the 2008 agreement alone, it would still be entitled to summary judgment for at least two independent reasons.  First, regardless of whether Custom breached its duty to defend US Bank, Custom breached its duty to indemnify US Bank for its expenses resulting from Custom's acts, which included US Bank's attorney's fees in the underlying litigation.  Custom's obligation to indemnify and hold harmless US Bank, and US Bank's obligation to allow Custom to control the defense of its lawsuits, are two separate obligations.[37]

Custom assumes that by complying with the duty to defend it has *per se* complied with its duty to indemnify, but not so.  The duty to defend and the duty to indemnify are distinct.[38]  The 2008 agreement states that "notwithstanding any other provision" in the agreement, Custom agreed to pay for all of US Bank's "costs and expenses (including reasonable attorney's fees)" that arise from Custom's repossessions.  Nothing in the agreement suggests that Custom's

---

[36] Custom also moves to preclude US Bank from arguing that the 2011 agreement governs the parties' dispute because US Bank took the position in another case that the 2008 agreement governs, and thus US Bank is judicially estopped from taking a contrary position now. *See* ECF No. 67.  I deny Custom's motion because US Bank offers evidence showing that it has not, in fact, taken inconsistent positions in these cases.  US Bank relied on the 2008 agreement in the prior action to show that it had no agency relationship with Custom's subcontractor when the case was filed—it never took the position that the 2011 agreement did not govern US Bank's relationship with Custom related to US Bank's election of new counsel. *See* ECF Nos. 77, 77-1, 77-2.

[37] Custom also argues that it is somehow relieved of obligations under the parties' agreements because it purchased insurance.  But Custom provides no authority in caselaw or the agreements themselves to support this argument.

[38] *Econ. Fire & Cas. Co. v. Iverson*, 426 N.W.2d 195, 200 (Minn. Ct. App. 1988) (reversed in part on different grounds).

obligations to pay are contingent on US Bank not interfering with Custom's right to control the defense. Perhaps Custom could have argued that US Bank's damages should be offset by any damage US Bank caused in breaching Custom's rights—but Custom never made that claim, either in its answer or now in its briefing.[39]  Instead, Custom maintains that it has complied with all of its obligations simply by providing an attorney.[40]  But it provides no support for its position, and I can find none.

Second, in the alternative, there is no triable issue as to whether Custom breached its duty to defend US Bank.  The 2008 agreement gave Custom exclusive control over US Bank's defense—that obligation must include providing not just any defense, but a reasonable one.  And the undisputed evidence shows that Custom breached this duty when it failed to ensure US Bank's attorney was doing what he was supposed to, particularly after US Bank brought its concerns to Custom's attention.

And in any event, US Bank has established that Custom's failure to provide an adequate defense breached the covenant of good faith and fair dealing.  In Minnesota, "every contract

---

[39] And even if it had argued this, it likely would have been unsuccessful.  Custom's right to control the defense might have been relevant if US Bank could only sue for breach of the duty to defend (for example, if the claim against US Bank triggered the much-broader duty to defend but not the narrower duty to indemnify).  But Custom has never disputed that it is liable to indemnify US Bank for all of its costs related to the underlying litigation.

[40] Custom suggests that it has no liability for indemnity because a judgment was never entered against US Bank. ECF No. 128 at 4 ("[N]o legal liability was established . . . U.S. Bank was granted summary judgment . . . and no need for indemnity.").  But the 2008 agreement makes clear that Custom's obligation to indemnify and hold US Bank harmless extended to all of US Bank's fees and costs—expressly including attorney's fees—not just a judgment against US Bank.  Even if the agreement itself did not answer this question, Custom provides no authority suggesting that the terms "indemnity" or "hold harmless" extend only to judgments.  Black's Law Dictionary defines "indemnify" to mean "To reimburse (another) for a loss suffered because of a third party's or one's own act or default." Black's Law Dictionary (10th ed. 2014).  And there is no dispute that US Bank's attorney's fees are a loss it suffered because of Custom's acts (and the resulting litigation).  Indeed, Minnesota law generally holds that indemnitors are liable for attorney's fees and costs imposed against the indemnitee. *See, e.g.*, *Brown v. State Auto. & Cas. Underwriters*, 293 N.W.2d 822, 825 (Minn. 1980).

includes an implied covenant of good faith and fair dealing."[41]  Good faith performance of a

contract includes faithfulness to the purposes and expectations the parties had when entering it.[42]

Custom does not even meaningfully oppose US Bank on this point, which is enough of a reason

for me to rule in US Bank's favor.[43]  In any event, when the parties contracted for Custom to

provide US Bank with a defense, they intended that Custom would take steps to provide adequate

counsel.  If not, there would be no point to contracting for a defense at all.[44]  By failing to take

reasonable steps to provide an adequate defense for US Bank, Custom violated the spirit of the

parties' agreement.

In short, US Bank has established that Custom breached the parties' agreements in

multiple fashions, each of which is enough on its own to make Custom liable for US Bank's

litigation expenses in the underlying suit.

**C.  There is no triable issue of fact remaining as to the extent of US Bank's damages.**

With Custom now liable for breaching the parties' agreements, US Bank must establish

there is no triable issue as to its damages flowing from that breach.  As a preliminary note,

Custom offers no argument in response to US Bank's damages calculations—Custom opposed

US Bank's motion for summary judgment solely on the ground that Custom never breached the

---

[41] *In re Hennepin County 1986 Recycling Bond Litig.,* 540 N.W.2d 494, 502 (Minn. 1995).

[42] *White Stone Partners, L.P. v. Piper Jaffray Companies, Inc.,* 978 F.Supp. 878, 881 (D. Minn. 1997).

[43] Our local rules treat a party's non-response as a consent to granting a motion. *See* L.R. 7-2(d).  Ninth Circuit authority suggests that I must still ensure that US Bank has met its initial burden to show an absence of material fact, and as I explain below, it has.

[44] US Bank argues that Custom also breached the 2008 agreement by failing to affirmatively exert control over US Bank's defense.  But US Bank provides no authority or analysis indicating that the agreement's control provision obligated Custom to do anything.  The 2008 agreement obligated Custom to "defend" and "indemnify" US Bank, nothing more.

1   parties' agreements in the first place.  Custom's failure to respond on this issue is enough, on its

2   own, for me to rule in US Bank's favor on its damages calculations.[45]

3         The proper "damage award is the monetary amount sufficient to place the plaintiff in the

4   same situation as if the contract had been performed."[46]  Whether Custom's breach was failing to

5   indemnify US Bank for its litigation expenses or failing to provide an adequate defense, the

6   measure of damages is the same: the amount that US Bank needed to adequately defend itself, or

7   in other words, its litigation expenses.

8         US Bank offers detailed evidence establishing that it incurred $99,799.95 in litigation

9   expenses related to the underlying lawsuit.  This includes $4,992.75 incurred when it initially

10  hired counsel to defend it, and $94,341.55 in fees and $465 in costs after it replaced Custom's

11  counsel.[47]  US Bank's counsel in the underlying action provides an itemized breakdown of what it

12  charged US Bank, and why.[48]  US Bank's evidence also establishes that the attorneys' rates and

13  hours worked are reasonable.[49]  Notably, Custom does not dispute any of US Bank's expenses or

14  its evidence, and it provides no evidence or analysis in opposition.  US Bank has thus established

15  there is no triable issue as to either Custom's liability or the extent of US Bank's damages.

16  / / / /

17  / / / /

18  / / / /

19  / / / /

20  / / / /

21

22      [45] Again, because US Bank moves for summary judgment, I must still ensure that US

23  Bank has met its initial burden by providing admissible evidence to supports its calculations.
    And as I explain below, it has.

24      [46] *Christenson v. Milde*, 402 N.W.2d 610, 613 (Minn. Ct. App. 1987).

25      [47] *See* ECF No. 115-7 at 7 (detailing invoices sent to US Bank for litigation expenses in
    the underlying case); ECF No. 115-8 (authenticated invoices of all of US Bank's litigation

26  expenses in the underlying case).

27      [48] ECF No. 115-7 at 6-8; ECF No. 115-8.

28      [49] *See* ECF No. 115-7 at 6-9; ECF No. 115-20.

**D.  Judge Foley's Sanctions Order is affirmed.**

After lengthy hearings, Magistrate Judge Foley entered evidentiary and monetary sanctions against Custom.[50]  Custom objects to Judge Foley's order.  I may reconsider Judge Foley's order only if his decision was "clearly erroneous or contrary to law."[51]

Judge Foley's order details the facts underlying his decision, so I will not repeat them here.  In short, Custom delayed providing a Rule 30(b)(6) corporate witness to testify on its behalf.[52]  Custom forced US Bank to brief and attend multiple hearings to compel that deposition.  Judge Foley specifically instructed Custom to provide a Rule 30(b)(6) witness who was prepared to testify.  But when Custom finally presented its witness, the witness admitted he was woefully unprepared to testify.[53]

Judge Foley held that by producing a witness who was not properly prepared to testify, Custom had effectively failed to produce a Rule 30(b)(6) witness.  This holding was not contrary to law.[54]  Nor was Judge Foley wrong in concluding that Custom's failure to provide a Rule 30(b)(6) witness warranted money and evidentiary sanctions.[55]  Indeed, case-dispositive sanctions may have been warranted here.[56]

---

[50] ECF No. 103.

[51] LR IB 3-1; Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).

[52] ECF No. 103 at 2-3.

[53] ECF No. 103 at 5-7.

[54] *See Great Amer. Ins. Co. v. Vegas Constr. Co., Inc*., 251 F.R.D. 534, 542 (D. Nev. 2008) ("A number of courts have held that the failure to produce a Rule 30(b)(6) designee who is adequately educated and prepared to testify on designated topics to bind the corporation amounts to a nonappearance which could warrant the imposition of sanctions."); *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 151 (S.D.N.Y. 1997).

[55] Fed. R. Civ. P. 37(d) grants courts the discretion to impose sanctions if a party fails to attend its own deposition.

[56] Judge Foley found that Custom's failure to prepare its corporate witness was not merely a mistake, but willful bad faith and the record clearly supports that conclusion. *See* ECF No. 103 at 7-8. Notably, counsel for Custom made questionable representations in his briefing that appear to be either willfully or recklessly false.  For example, Custom's counsel stated in his opposition that US Bank never made a demand for fees related to the underlying action, but Custom's discovery responses admit that it did receive a demand. *See* ECF No. 115-3 at 8.

1     Given that Judge Foley specifically instructed Custom to produce a Rule 30(b)(6) witness,

2  and given the undisputed evidence that Custom made little to no effort to provide a witness

3  prepared to testify on behalf of Custom as Rule 30(b)(6) requires, Judge Foley's sanctions order

4  is not clearly erroneous or contrary to law.[57]

5  **III.    CONCLUSION**

6     IT IS THEREFORE ORDERED that US Bank's motion for summary judgment **(ECF No.**

7  **115) is GRANTED**.  US Bank is awarded damages in the amount of $99,799.95.  US Bank is

8  also awarded prejudgment interest on that award at 10% per annum, totaling $35,872.75.[58]  Thus,

9  the clerk of the court shall enter judgment in favor of US Bank in the total amount of

10  $135,672.70.

11     IT IS FURTHER ORDERED that Magistrate Judge Foley's Order **(ECF No. 101, 103)**

12  **are AFFIRMED.**

13     IT IS FURTHER ORDERED that Custom's motion for judicial estoppel **(ECF No. 67) is**

14  **DENIED.**

15     IT IS FURTHER ORDERED that the parties' remaining motions and objections **(ECF**

16  **Nos. 74, 81, 82, 102, 105, 106, 109, 112, 113, 119, 127, 137) are denied as moot.**

17     DATED this 17th day of February, 2017.

18

19                                    _____
                                       ANDREW P. GORDON
20                                     UNITED STATES DISTRICT JUDGE

21

22

23     [57] Custom also objects to Judge Foley's order giving US Bank an extension on its deadline
   to file dispositive motions and responses. ECF No. 101.  I deny Custom's objection and affirm
24  this order.  Custom has not shown that Judge Foley's decision to extend the deadline was "clearly
   erroneous or contrary to law," particularly given that Judge Foley granted the extension based in
25  large part on Custom's prior consent and its repeated delays and failures to cooperate in
   discovery.  *See* ECF No. 101 at 2; *see also* LR IB 3-1; Fed. R. Civ. P. 72(a); 28 U.S.C. §
26  636(b)(1)(A).

27     [58] That amount is calculated from July 15, 2013 until the date of this order as follows: $99,799.95
   x .10 x 3 years + $27.34 per diem x 217 days (July 15, 2016 to present).
28